JEFFREY H. WOOD, Acting Assistant Attorney General
COBY HOWELL, Senior Trial Attorney
MATTHEW MARINELLI, Trial Attorney
BRIAN COLLINS, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Div.
Wildlife and Marine Resources Section
1000 SW Third Ave, Suite 600
Portland, OR 97204-2024
Tel: (503) 727-1023
Fax: (503) 727-1118
coby.howell@usdoj.gov

*Remaining Counsel for Federal
Defendants Listed Below*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| **Defenders of Wildlife**, et al., | Case No. CV 15-00014-GF-BMM |
| Plaintiffs; | **BRIEF IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR PARTIAL DISMISSAL FOR WANT OF JURISDICTION AND TO DISSOLVE PRELIMINARY INJUNCTION** |
| v. | |
| **U.S. Army Corps of Engineers**, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

I     INTRODUCTION ......................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ...................................2

    A.    The Project ..................................................................2

    B.    The Court's Decision and Preliminary Injunction Order.....................3

III.    ARGUMENT...........................................................................4

    A.    The Court No Longer Has Jurisdiction Over Plaintiffs' NEPA Claim Because the Federal Defendants Have Issued an EIS and ROD, Rendering the Claim Moot. ........................................4

    B.    Federal Defendants' Issuance of an EIS and ROD Addressing the Issues Raised in the Court's Preliminary Injunction Order Constitute Changed Circumstances Warranting the Dissolution of the Injunction. ...........................................8

        1.    Standard of review for dissolution of an injunction ..................8

        2.    The 2016 EIS and 2016 ROD address the issues raised by the Court and warrant dissolution of the preliminary injunction. ...............................................................10

        3.    If the preliminary injunction is not lifted by April 15, 2016, the Project, and its benefits for the sturgeon will likely be lost for at least another year and likely for the foreseeable future......................................................11

    C.    The Balance of Hardships and Public Interest Tip Strongly In Favor of Dissolving the Preliminary Injunction.................................15

IV.    CONCLUSION........................................................................17

V.    CERTIFICATE OF COMPLIANCE ........... **Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

## Cases

*Agostini v. Felton*,
  521 U.S. 203 (1997) ...........................................................................................10

*Agrigenetics, Inc. v. Rose*,
  62 F.3d 268 (8th Cir. 1995) ..................................................................................6

*All. for Wild Rockies v. Kruger*,
  15 F. Supp. 3d 1052 (D. Mont. 2014) ................................................................10

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
  126 F.3d 1118 (9th Cir. 1997) ...........................................................................5, 6

*Amoco Prod. Co. v. Vill. of Gambell*,
  480 U.S. 531 (1987) ...........................................................................................15

*Conservation Cong. v. U.S. Forest Serv.*,
  Civ. No. 2:12-02416 WBS KJN, 2016 WL 1162676 (E.D. Cal. Mar. 24, 2016) 12

*Credit Suisse First Boston Corp. v. Grunwald*,
  400 F.3d 1119 (9th Cir. 2005) ..............................................................................9

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ..............................................................................................7

*Forest Serv. Employees for Envtl. Ethics v. U.S. Forest Serv.*,
  408 F. Supp. 2d 916 (N.D. Cal. 2006) ..................................................................6

*Grand Canyon Trust v. U.S. Bureau of Reclamation*,
  691 F.3d 1008 (9th Cir. 2012) ..........................................................................6, 8

*Horne v. Flores*,
  557 U.S. 433 (2009) ...........................................................................................10

*Humane Soc'y of U.S. v. Bryson*,
  No. 12-cv-642-SI, 2012 WL 1952329 (D. Or. May 30, 2012) .................... 16, 18

*Idaho Dep't of Fish & Game v. Nat'l Marine Fisheries Serv.*,
  56 F.3d 1071 (9th Cir. 1995) ................................................................................6

*Idaho Rivers United v. U.S. Army Corps of Eng'rs*,
  No. C14-1800JLR, 2015 WL 9700887 (W.D. Wash. Jan. 7, 2015) ............. 16, 18

*In re Detroit Auto Dealers Ass'n*,
   84 F.3d 787 (6th Cir. 1996) ..................................................................9

*Lands Council v. Krueger*,
   No. CV 09-164-N-EJL-REB, 2014 WL 6629591 (D. Idaho Nov. 21, 2014) ......12

*Moon v. GMAC Mortg. Corp.*,
   No. C08-969Z, 2008 WL 4741492 (W.D. Wash. Oct. 24, 2008) ........................10

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011) ..............................................................5

*Princeton Univ. v. Schmid*,
   455 U.S. 100 (1982) ............................................................................6

*Pub. Utils. Comm'n v. FERC*,
   100 F.3d 1451 (9th Cir. 1996) ..............................................................5

*S.D. Myers, Inc. v. City & Cty of San Francisco*,
   253 F.3d 461 (9th Cir. 2001) ................................................................5

*Sharp v. Weston*,
   No. 14-35350, 2016 WL 7030690 (9th Cir. Dec. 2, 2016) ...................................10

*Sierra Club v. Marsh*,
   816 F.2d 1376 (9th Cir. 1987) ............................................................16

*Spencer v. Kemna*,
   523 U.S. 1 (1998) .................................................................................5

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
   316 F.2d 804 (9th Cir. 1963) ................................................................9

*Tenn. Valley Auth. v. Hill*,
   437 U.S. 153 (1978) ............................................................................18

*Thompson v. United States*,
   Civil No. -06-4572 (PAM/JSM), 2007 WL 773713 (D. Minn. Mar. 12, 2007) ....7

*United States v. Oregon*,
   769 F.2d 1410 (9th Cir. 1985) ..............................................................9

*United States v. Swift & Co.*,
   189 F. Supp. 885 (N.D. Ill. 1960) .......................................................10

*Univ. of Haw. Prof'l Assembly v. Cayetano*,
   125 F. Supp. 2d 1237 (D. Haw. 2000) .................................................9

*W. Watersheds Project v. Salazar,*
  692 F.3d 921 (9th Cir. 2012) ...............................................................................16

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982) ...............................................................................................15

## I.    INTRODUCTION

Since this Court issued its preliminary injunction order on September 4, 2015, Federal Defendants have worked diligently to address the Court's concerns and to complete a comprehensive Environmental Impact Statement ("2016 EIS") addressing the impacts of the proposed Lower Yellowstone Intake Diversion Dam Fish Passage Project.  Federal Defendants have now completed that work, directly addressing the questions raised in the Court's review of the 2015 Environmental Assessment for the Project.  As part of that process, Federal Defendants issued a new Record of Decision ("2016 ROD") that the Plaintiffs have not challenged. The Army Corps of Engineers ("Corps") and the Bureau of Reclamation ("Reclamation") now stand ready to implement this new decision to improve the operation of the Intake Dam and to contribute to the recovery of the endangered pallid sturgeon.  Federal Defendants respectfully request that the Court dismiss Count Six of Plaintiffs' Third Amended Complaint because it is now moot.  The 2016 EIS and Record of Decision supersede the NEPA documents challenged in Plaintiffs' Third Amended Complaint.  Accordingly, the Court lacks jurisdiction over that claim.

In addition, Federal Defendants request that the Court dissolve the preliminary injunction it issued on September 4, 2015, as the injunction is based upon claims that are now moot.  Setting aside mootness, however, Federal

1

Defendants have fully addressed the Court's concerns outlined in that order, and the 2016 EIS directly addresses the questions raised by the Court.  Having completed the analysis there is no reason for further delay of the Project, which is critical to Federal Defendants' efforts to carry out their responsibilities under the Endangered Species Act ("ESA").  Indeed, further delay will not only increase the costs of the Project, but have the potential to jeopardize the Project altogether.  More importantly, further delay will put off for at least another year the anticipated benefits to the remaining 125 wild pallid sturgeon in the Upper Missouri River Basin, and the U.S. Fish and Wildlife Service ("FWS") believes that this delay will harm this critically endangered species.  The preliminary injunction should therefore be dissolved and Federal Defendants should be permitted to move forward with this important Project as expeditiously as possible.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Project

The Lower Yellowstone Intake Diversion Dam Fish Passage Project is designed to improve fish passage around the Lower Yellowstone Intake Diversion Dam ("Intake Dam") for the pallid sturgeon, allow continued operation of the Lower Yellowstone Project, and to contribute to ecosystem restoration. Improvements to fish passage are expected to "contribute to recovery of pallid sturgeon by providing access to as much as 165 additional miles of the

Yellowstone River for migration, spawning, and development of larvae." EX. A, 2016 ROD at 2. Improving passage for pallid sturgeon at the Intake Diversion Dam would provide access to a large area of the sturgeon's historic range that has been mostly inaccessible since 1909. EX. B, 2016 EIS at 1-9.

B.   **The Court's Decision and Preliminary Injunction Order**

On September 4, 2015, the Court issued an order granting Plaintiffs' Motion for Preliminary Injunction. ECF No. 73. The Court found that there were substantial questions going to the merits of Plaintiffs' claims that 1) "the EA for the Project fails to analyze all Project impacts on pallid sturgeon[,]" and 2) that an EIS was required in lieu of an EA. ECF No. 73 at 7. Specifically, the Court held that there were substantial questions regarding Plaintiffs' claims that the EA failed to analyze

> whether the pallid sturgeon actually would be likely to use the bypass
> channel . . . whether similar bypass channels have been successful in
> the past . . . whether the bypass channel likely would allow a
> sufficient number of pallid sturgeons to spawn so that the species
> could recover, or whether the new weir will prevent pallid sturgeon
> from recovering.

ECF No. 73 at 8. The Court granted Plaintiffs' Motion for Preliminary Injunction and ordered that Federal Defendants "are enjoined from further implementing the Project until dissolution of the preliminary injunction." ECF No. 73 at 20.

3

In response to the Court's preliminary injunction order, the Parties negotiated a stipulation to stay the litigation which allowed Federal Defendants to complete the additional NEPA analysis contemplated in the Court's preliminary injunction order, as well as a new Biological Opinion and Clean Water Act ("CWA") findings.  ECF No. 84.  Pursuant to that stipulation, Federal Defendants prepared an Environmental Impact Statement to analyze the impacts of the Project on the pallid sturgeon.  A formal scoping period began in January 2016.  A Draft Environmental Impact Statement ("DEIS") was released for public review with a Notice of Availability ("NOA") published in the Federal Register on June 3, 2016.  EX. A, (2016 ROD) at 3.  The EIS was released for state, agency, and public review with a NOA published in the Federal Register on October 21, 2016.  EX. A, (2016 ROD) at 3.  The 2016 Record of Decision was signed on December 2, 2016.

## III.   ARGUMENT

### A.   The Court No Longer Has Jurisdiction Over Plaintiffs' NEPA Claim Because the Federal Defendants Have Issued an EIS and ROD, Rendering the Claim Moot.

The case-or-controversy requirement "subsists through all stages of federal judicial proceedings, trial and appellate." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citations omitted). "[T]hroughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id*. (citation and internal quotation

4

marks omitted); *see also Pub. Utils. Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996).  The plaintiff bears the burden of demonstrating the existence of a case or controversy at all stages of the litigation.  *S.D. Myers, Inc. v. City & Cty of San Francisco*, 253 F.3d 461, 474 (9th Cir. 2001).

"The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011).  "A claim is moot if it has lost its character as a present, live controversy." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997), *as amended* (Sept. 16, 1997). "If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed." *Id.* If actual or threatened injury from the particular action challenged no longer exists, or a change in circumstances deprives a court of the ability to provide any meaningful or effective relief for the alleged violation, the matter is moot and must be dismissed for lack of jurisdiction.  *See Grand Canyon Trust v. U.S. Bureau of Reclamation,* 691 F.3d 1008, 1017 (9th Cir. 2012), *as amended* (Sept. 17, 2012).

The Ninth Circuit has repeatedly held that the issuance of a superseding administrative action moots claims regarding the preceding action.  *Id.* ("We have held that the issuance of a superseding BiOp moots issues on appeal relating to the preceding BiOp."); *Am. Rivers*, 126 F.3d at 1124 ("the biological opinion in the

present case has been superseded by the 1995 Biological Opinion. Therefore, any

challenge to the 1994–1998 Biological Opinion is moot."); *Idaho Dep't of Fish &*

*Game v. Nat'l Marine Fisheries Serv.*, 56 F.3d 1071, 1075 (9th Cir. 1995) (holding

that Plaintiff's claims were moot because "the 1993 BO has been superseded, and

the federal agencies will rely on NMFS' 1994–1998 BO for the near future.").

Other courts have repeatedly found that withdrawing, replacing, or superseding an

agency action moots any controversy over such action.  *See Princeton Univ. v.*

*Schmid*, 455 U.S. 100, 103 (1982) (holding that a challenge to a university

regulation was moot where a new regulation had been adopted); *Agrigenetics, Inc.*

*v. Rose*, 62 F.3d 268, 270 (8th Cir. 1995) (holding that, where challenged

noncompetition provisions of the employment agreement had expired, the claim

was moot); *Forest Serv. Employees for Envtl. Ethics v. U.S. Forest Serv.*, 408 F.

Supp. 2d 916, 918-19 (N.D. Cal. 2006) (dismissing case after withdrawal of timber

sale decision because, if sale were authorized in the future, "the basis for the

decision, and the basis for a challenge to that decision, could change."); *Thompson*

*v. United States*, Civil No. 06-4572 (PAM/JSM), 2007 WL 773713, at *1 (D.

Minn. Mar. 12, 2007) (challenge to summonses rendered moot by the agency's

withdrawal of the summonses).

  Here, Plaintiffs' NEPA claim in their Third Amended and Supplemental

Complaint (ECF No. 52) have been rendered moot because the agencies have

issued new decisions and record documents that supersede the decisions challenged by Plaintiffs.  Plaintiffs' Sixth cause of action raises a NEPA challenge to the 2015 Final EA for the Intake Project and the FONSI adopting the Bypass Channel Alternative on April 1, 2015.  Third Am. Compl. ¶¶ 228-236.  The Corps and Reclamation have now completed a comprehensive EIS and Record of Decision that analyze the impacts of the Project.  *See* EX. B, (2016 EIS) and EX. A, (2016 ROD).  Any controversy between the parties over the EA and FONSI is not the same controversy presented by the present EIS and ROD.[1]  The existence of a new decision and a new record is dispositive.

Review of an APA claim depends on the sufficiency of the administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-744 (1985).  Here, the Court concluded in its preliminary injunction order that the Plaintiffs were likely to prevail on their claims that the EA failed to consider certain aspects of the Project.  Any APA challenge to the current EIS and ROD, however, would entail review of the new and different administrative record for the new decision.  The adequacy of the superseded record underlying the 2015 EA and FONSI is now immaterial.  *E.g., Grand Canyon Trust*, 691 F.3d at 1017, 1024 (agency's "issuance of superseding BiOp [biological opinion] moots issues on appeal relating to the preceding BiOp"; "any inquiry into whether [challenged agency action] violated

---

[1] Notably, Plaintiffs have not challenged the present EIS and ROD.

the APA would require us to delve into the merits of the 2009 BiOp, a document that is no longer operative.").  The 2015 Final EA and FONSI are no longer operative, and the Court can provide no meaningful relief with regard to Plaintiffs' Sixth cause of action.  Plaintiffs' NEPA claim should therefore be dismissed.

**B.      Federal Defendants' Issuance of an EIS and ROD Addressing the Issues Raised in the Court's Preliminary Injunction Order Constitute Changed Circumstances Warranting the Dissolution of the Injunction.**

Because the claims upon which it is based are moot, the preliminary injunction should also be dissolved.  Setting aside mootness, however, Federal Defendants respectfully submit that the Court should dissolve the injunction issued on September 4, 2015, because the Federal Defendants have completed the additional analysis that the Court had found lacking in the original decision for the Project.  The agencies completed the 2016 EIS in October 2016, and issued a new Record of Decision on December 2, 2016.  The new analysis addresses the issues that gave rise to the Court's issuance of the preliminary injunction.  Completion of the 2016 EIS and issuance of the 2016 ROD constitute changed circumstances that warrant the dissolution of the preliminary injunction.

**1.      Standard of review for dissolution of an injunction**

Courts have "continuing jurisdiction to terminate, dissolve, vacate, or modify an injunction or an interlocutory order in the event that changed circumstances require it."  *Univ. of Haw. Prof'l Assembly v. Cayetano*, 125 F.

Supp. 2d 1237, 1240 (D. Haw. 2000) (citing *United States v. Oregon*, 769 F.2d 1410, 1416 (9th Cir. 1985); *In re Detroit Auto Dealers Ass'n*, 84 F.3d 787, 789 (6th Cir. 1996)). "Federal Rule of Civil Procedure 54(b) states that a district court can modify an interlocutory order 'at any time' before entry of a final judgment, and we have long recognized 'the well-established rule that a district judge always has power to modify or to overturn an interlocutory order or decision while it remains interlocutory.'" *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). "Although a motion for reconsideration is subject to Rule 59(e)'s ten-day time limit, there is no time limit on a motion to vacate or dissolve a preliminary injunction." *Id.*

A party seeking dissolution of an injunction must demonstrate that there has been a significant change in facts or law. *All. for Wild Rockies v. Kruger*, 15 F. Supp. 3d 1052, 1054 (D. Mont. 2014) (citing *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir 2000)), *aff'd*, No. 14-35350, 2016 WL 7030690 (9th Cir. Dec. 2, 2016); *Moon v. GMAC Mortg. Corp.*, No. C08-969Z, 2008 WL 4741492, at *2 (W.D. Wash. Oct. 24, 2008) ("A significant change is one that pertains to the underlying reasons for the injunction.") (citation omitted). It is an abuse of discretion if, after the moving party carries this burden, the court "refuses to

modify an injunction . . .  in light of such changes."  *Horne v. Flores*, 557 U.S.

433, 447 (2009) (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)).

>    **2.**    **The 2016 EIS and 2016 ROD address the issues raised by the Court and warrant dissolution of the preliminary injunction.**

The Court should dissolve its injunction because the agencies have remedied

the issues identified by the Court in its preliminary injunction order.  Completion

of the 2016 EIS and issuance of the 2016 ROD is a "significant change" directly

implicating the rationale for the preliminary injunction, and therefore warrants the

injunction's dissolution.  *See GMAC Mortg.,* 2008 WL 4741492, at *2 (citing

*United States v. Swift & Co.*, 189 F. Supp. 885, 905 (N.D. Ill. 1960)); *see also*

*Horne*, 557 U.S. at 447.

Specifically, Federal Defendants have prepared an EIS that comprehensively

analyzes the environmental impacts of the Project, and specifically addresses

impacts to the pallid sturgeon.  EX. A, (2016 ROD) and EX. B, (2016 EIS). The

EIS also provides detailed analysis of the questions highlighted in the Court's

preliminary injunction order: 1) whether the pallid sturgeon actually would be

likely to use the bypass channel; 2) whether similar bypass channels have been

successful in the past; 3) whether the bypass channel likely would allow a

sufficient number of pallid sturgeons to spawn so that the species could recover; or

4) whether the new weir will prevent pallid sturgeon from recovering.  ECF No. 73

at 8.  The 2016 EIS explicitly analyzes these four questions in detail.  EX. B at l –

lviii (executive summary describing analysis of the issues).   In short, Federal

Defendants have thoroughly analyzed the issues identified in the Court's

preliminary injunction order.

Upon review of the EIS, as well as the new Biological Assessment dated

August 2016 and the new Biological Opinion (issued on November 18, 2016),

Federal Defendants have determined that the Project may proceed with the

preferred alternative to construct a channel that will allow for fish passage around

the Intake Dam.  EX. A.  The Corps and Reclamation's thorough analysis in the

2016 EIS and ROD are exactly the type of significant change in factual

circumstances that warrant dissolving the preliminary injunction.  *See All. for Wild*

*Rockies*, 15 F. Supp. 3d at 1057; *Lands Council v. Krueger*, No. CV 09-164-N-

EJL-REB, 2014 WL 6629591, at *5 (D. Idaho Nov. 21, 2014); *Conservation Cong.*

*v. U.S. Forest Serv.*, CIV. NO. 2:12-02416 WBS KJN, 2016 WL 1162676, at *3

(E.D. Cal. Mar. 24, 2016).

        **3.**      **If the preliminary injunction is not lifted by April 15, 2016, the Project, and its benefits for the sturgeon will likely be lost for at least another year and likely for the foreseeable future.**

Not only is dissolution of the injunction warranted by Federal Defendants'

issuance of the 2016 EIS and ROD, but further delay in dissolving the injunction

will likely cause even further significant delays in the implementation of the

11

Project.  Construction of the fish passage is designed to account for the pallid sturgeon spawning season, which typically ends by July 1.  Ponganis Decl. ¶ 6 (Ex. C).  With construction not able to begin until July 1, that leaves very little time for construction before ice and winter weather makes construction impossible.  *Id.* The contractor cannot start work on the Project until it receives a "Notice to Proceed" from the Corps. Only after receiving the notice to proceed can the contractor begin to procure materials and prepare and submit the final paperwork and plans necessary to begin construction.  Ponganis Decl. ¶¶ 5-6.  Typically, it takes between 60-90 days from the time a notice to proceed is issued until a contractor is able to begin work.  Accordingly, in order for the contractor to begin work by July 1, Federal Defendants must be able to issue a notice to proceed no later than April 15, 2017.  Ponganis Decl. ¶¶ 4-6, 9.  If Federal Defendants miss the critical window to issue the notice to proceed, the contractor will likely lose the ability to begin physical construction of the Project during this year's construction season, which will delay completion of the Project for at least an additional year. And this is yet another year that the sturgeon will not have a reliable fish passage around the Intake Dam.

In addition to the loss of time, there is also a significant financial risk to further delaying construction of the Project.  The Corps has obligated $20 million from fiscal year ("FY") 2015 funds to begin the project.  Ponganis Decl. ¶ 9.

However, if the Corps cannot issue the notice to proceed by April 15, 2017, and demonstrate that physical construction will begin during this fiscal year, these funds will be de-obligated and used for other projects.  Ponganis Decl. ¶ 9.  Once these funds are de-obligated, there are no current funding proposals in the budgetary cycle and it is unclear when, or whether, the Corps would ever receive funds again to complete the Project.  Ponganis Decl. ¶ 9.  Because this is a unique situation where the Corps is funding construction at a Reclamation facility and has no direct obligation to provide fish passage at Intake, if the Corps cannot issue the notice to proceed by April 15, 2017, and begin construction this fiscal year, these funds and any additional funding will likely disappear.  Ponganis Decl. ¶ 9 ("if the Corps is not able to issue the notice to proceed by 15 April 2017, it is unlikely that there would be continued Corps funding for this project.").[2]

Moreover, if the Corps does not fund the project, Reclamation and the Irrigation Districts' ability to secure funding for a project this size and expense is even more uncertain.  Ryan Decl. ¶¶ 48-55 (Ex. D).  Under the Reclamation Act, the Irrigation Districts are responsible for any funds spent on the operation and

---

[2] Losing the 2017 construction season could cost the Nation's taxpayers over $1,000,000 in inflationary adjustments.  Ponganis Decl. ¶ 7.  It is also possible that delay in issuing the notice to proceed will be treated by the contractor as a termination of the contract.  Ponganis Decl. ¶ 7.  This could in turn lead to additional increased costs in trying to secure another contractor or the failure of the Project altogether.

maintenance of Intake, which includes mitigation for ESA compliance.  Ryan
Decl. ¶ 50.  But even if Reclamation could secure the $59 million necessary for the
Project through appropriations in FY 2020 (which is earliest available budgetary
cycle and far from certain), the Irrigation Districts would be obligated to pay these
funds back to the Treasury.  Ryan Decl. ¶ 51.  These farms cannot afford such a
significant liability, and probably would not be able to pay Reclamation back for
the Project.  Ryan Decl. ¶ 51 (EIS finding that the average annual farm income was
$46,311, but the obligation to re-pay a $59 million liability would be $1,070 per
acre, or an approximate liability of $254,660 per average farm operation).  Failure
to reimburse the Treasury would breach their contracts and the Irrigation Districts
would be required to cease use of the Intake Project.  Ryan Decl. ¶ 52.  This would
devastate the economic viability of this area.  Reclamation and the Irrigation
Districts cannot afford the Project as currently proposed, and absent Corps funding,
there is no immediate solution.  In the interim, pallid sturgeon will not have any
reliable by-pass around the existing Intake Dam.  Ryan Decl. ¶ 55.

Delay risks Corps funding.  And this will only work to the detriment of the
pallid sturgeon by putting off perhaps indefinitely the construction of the fish
passage channel designed to protect it.  Federal Defendants respectfully request
that the Court dissolve the preliminary injunction as expeditiously as possible and
allow this vital project to proceed.

14

### C.     The Balance of Hardships and Public Interest Tip Strongly In Favor of Dissolving the Preliminary Injunction.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982) (citation omitted). "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). In cases involving the ESA, "the balance of hardships and the public interest tip heavily in favor of endangered species." *Sierra Club v. Marsh*, 816 F.2d 1376, 1383 (9th Cir. 1987).  Harm to the listed species and efforts to protect those species are undeniably relevant considerations properly balanced. *Humane Soc'y of U.S. v. Bryson*, 2012 WL 1952329, at *9 (balancing the harm to "Defendants' ability to protect endangered and threatened salmonid stocks and aid in their recovery"); *Idaho Rivers United v. U.S. Army Corps of Eng'rs*, No. C14-1800JLR, 2015 WL 9700887, at *10 (W.D. Wash. Jan. 7, 2015) (balancing harm to efforts to protect listed species); *W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) (affirming denial of an injunction in a case involving the desert tortoise, a threatened species, where the district court properly considered, *inter alia*, protecting jobs).

Continued injunctive relief will delay reliable passage at the weir and this delay will harm pallid sturgeon.  Thabault Decl. ¶ 16 (Ex. E).  Each year that goes by without reliable passage denies the vast majority of pallid sturgeon the opportunity to spawn in the Yellowstone River's upper reaches. *Id*. There are approximately 125 wild adults left in this population.  *Id.* at ¶ 7.  Without access to these upper reaches, it is likely that there will be no natural recruitment of juveniles into the population because of insufficient drift distance.  And without natural recruitment, the wild component of this population could be extirpated forever. This species simply cannot tolerate further delay.

Nor is relying on the existing, intermittent side channel a sound management strategy. Ryan Decl. ¶¶ 41-44; Thabault Decl. ¶¶ 9-10.  Since monitoring began, the agencies have observed only a handful of fish using the side channel. Thabault Decl. ¶¶ 9-10 (five fish in 2014; one in 2015; none in 2016).  In most years, the existing Intake Dam blocks passage and there is insufficient flow for pallid sturgeon to use that channel.  *Id*. ¶ 7.  There is no dispute that the existing Intake Dam must be modified to promote the survival and recovery of this species by allowing for sufficient drift distance; the dispute lies in how this will be achieved. But additional delay, after years of study, is not in the public interest.  This is especially true when the agencies here have fully evaluated the Plaintiffs' proposed alternative and found it to be unfeasible.  EX. B, 2016 EIS at 2-66**.**  Plaintiffs

16

approached this Court claiming that they were only interested in seeking a more robust analysis through the EIS. Now that this very analysis has been completed, their continued objection is perplexing, at best.

The public interest instead weighs decidedly in favor of allowing Reclamation and the Corps to fulfill their ESA responsibilities and implement this mitigation for the pallid sturgeon's benefit. Indeed, Congress has already struck this balance in favor of listed species, "afford[ing them] the highest of priorities," "whatever the cost," *Tenn. Valley Auth. v Hill*, 437 U.S. 153, 174, 184 (1978). District courts in similar circumstances have overwhelmingly found that ensuring listed species' survival and recovery is paramount. *See Humane Soc'y v. Bryson*, No. 12-cv-642-SI, 2012 WL 1952329, *9 (D. Or. May 30, 2012). In a recent, analogous case where litigants sought to enjoin implementation of a requirement in a Biological Opinion, a district court "agree[d]" that "an injunction that hinders full implementation of [the BiOp] is not in the public interest and weighs against issuing the preliminary injunction." *Idaho Rivers*, 156 F. Supp. 3d at 1266. The same incongruous result would follow from continued injunctive relief. Plaintiffs' insistence on continued injunctive relief would frustrate the Corps' and Reclamation's ability to implement their respective ESA duties, and further delay harms this endangered species.

## IV.   CONCLUSION

Plaintiffs' NEPA claim is moot and should be dismissed because Federal Defendants have conducted an EIS and issued a new ROD that supersedes the documents challenged in Plaintiffs' Third Amended Complaint.  In addition, the Court should dissolve the preliminary injunction because Federal Defendants have completed an EIS and have addressed the issues identified by the Court in issuing its preliminary injunction.  Any further delay in allowing the Project to move forward will only work to the detriment of the pallid sturgeon and the Federal Defendants' ability to implement their duties under the ESA.

Dated: February 1, 2017.

Respectfully submitted,

JEFFREY H. WOOD,
Acting Assistant Attorney General
Environment & Natural Resources Div.
U.S. Department of Justice

*/s/ COBY HOWELL*

COBY HOWELL
Senior Trial Attorney
Wildlife and Marine Resources Section
1000 SW Third Ave, Suite 600
Portland, OR 97204-2024
Tel: (503) 727-1044
Fax: (503) 727-1118
coby.howell@usdoj.gov

MATTHEW MARINELLI

18

Trial Attorney
BRIAN COLLINS
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0248
Fax: (202) 305-0506
kristofor.swanson@usdoj.gov

DANIEL PINKSTON
Senior Trial Attorney
Environmental Defense Section
South Terrace, Suite 370
999 18th Street
Denver, CO  80202
Tel: (303) 844-1804
daniel.pinkston@usdoj.gov

## **Certificate of Service & Compliance**

I hereby certify that I filed the above pleading with the Court's CMS/ECF system, which will send notice to each party.  Pursuant to Local Civil Rule 7(d)(2)(E), I further certify that the opposition memorandum is 4250 words, exclusive of the caption, certificate of service and compliance, and tables of contents and authorities.

/s/
COBY HOWELL

19