**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 04 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DEFENDERS OF WILDLIFE and NATURAL RESOURCES DEFENSE COUNCIL,<br><br>　　　　Plaintiffs-Appellees,<br><br>　v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS; et al.,<br><br>　　　　Defendants-Appellants,<br><br>　and<br><br>LOWER YELLOWSTONE IRRIGATION PROJECT BOARD OF CONTROL; et al.,<br><br>　　　　Intervenor-Defendants. | No.　17-35712<br><br>D.C. No. 4:15-cv-00014-BMM<br><br>MEMORANDUM[*] |
| DEFENDERS OF WILDLIFE and NATURAL RESOURCES DEFENSE COUNCIL,<br><br>　　　　Plaintiffs-Appellees,<br><br>　v. | No.　17-35713<br><br>D.C. No. 4:15-cv-00014-BMM |

UNITED STATES ARMY CORPS OF ENGINEERS; et al.,

       Defendants,

and

LOWER YELLOWSTONE IRRIGATION PROJECT BOARD OF CONTROL; et al.,

       Intervenor-Defendants-Appellants.

Appeal from the United States District Court
for the District of Montana
Brian M. Morris, District Judge, Presiding

Argued and Submitted March 5, 2018
Portland, Oregon

Before: N.R. SMITH and HURWITZ, Circuit Judges, and CURIEL,[**] District Judge.

The U.S. Army Corps of Engineers appeals the district court's grant of the preliminary injunction of its project on the Lower Yellowstone River. We vacate the injunction.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Gonzalo P. Curiel, United States District Judge for the Southern District of California, sitting by designation.

We review the district court's decision to issue a preliminary injunction for an abuse of discretion. *Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1159 (9th Cir. 2011). "[T]he first step of our abuse of discretion test is to determine de novo whether the [district] court identified the correct legal rule to apply to the relief requested." *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc)). Also, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

1. Irreparable Harm, Balance of Equities, and Public Interest. The law is clear that only harm that will occur "in the absence of preliminary relief" may be considered in determining irreparable harm. *Id.* A court may not consider harm that will occur irrespective of an injunction, i.e. harm that the award of an injunction will not alleviate or prevent. Because the Defenders of Wildlife (DOW) did not seek to enjoin the operation and maintenance of the existing weir, the district court erred when it considered the harm caused by the "continued operation of the existing weir" in its assessment of the irreparable harm attributable to the proposed project.

3

The district court again erred when it flipped the burden of proof and required the Corps to prove that the proposed project would allow successful pallid sturgeon passage around the weir. Under the irreparable harm analysis, the Corps had no burden to prove that the proposed project would improve the plight of the pallid sturgeon over the status quo. Rather, DOW had the burden of proving some irreparable harm that would result specifically from the construction of the proposed project.

Lastly, absent evidence of irreparable harm caused by the project, the district court had no basis to conclude that the balance of equities or public interest favored an injunction.

2. <u>Likelihood of Success on the Merits.</u> The district court also erred in concluding that DOW had established a likelihood of success on the merits of its claims under the Endangered Species Act (ESA), the National Environment Protection Act (NEPA), and the Clean Water Act (CWA). On each of the claims at issue, the district court erred in supplanting the deferential standard of review under the Administrative Procedure Act (APA). At its core, this standard simply requires an agency to "articulate a rational connection between the facts found and the conclusions made." *Wild Fish Conservancy v. Salazar*, 628 F.3d 513, 529 (9th Cir. 2010) (quoting *Pac. Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of*

*Reclamation*, 426 F.3d 1082, 1091 (9th Cir. 2005)). Under this deferential standard, we find no basis to conclude that DOW was likely to succeed on the merits of its claims.

A. <u>The ESA</u>. The ESA requires a federal agency to ensure that its proposed project "is not likely to jeopardize the continued existence of any endangered species." 16 U.S.C. § 1536(a)(2). To jeopardize is to "reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species." 50 C.F.R. § 402.02. The agency articulated a reasoned basis for the no-jeopardy finding in its Biological Opinion. Indeed, the Incidental Take Statement and analysis of recovery issues support the agency's conclusion. First, the agency's approved incidental take represents a substantial *reduction* in the impairment of breeding caused in the project's absence and is thus consistent with the agency's no-jeopardy finding. Second, although not identifying a quantifiable recovery goal, the Biological Opinion adequately addressed the project's positive impact on species recovery.

Although analysis of the Incidental Take Statement and identification of a recovery goal may sometimes be needed to explain the reasoned basis for an agency's no-jeopardy finding, *see, e.g.*, *Southwest Center for Biological Diversity v. Bartel*, 470 F. Supp. 2d 1118, 1146-48 (S.D. Cal. 2006) (finding the agency's no

5

jeopardy conclusion unreasonable where the incidental take authorized "an *additional* 12% of habitat loss" without explanation (emphasis added)); *National Wildlife Federation v. National Marine Fisheries Service*, 524 F.3d 917, 936 (9th Cir. 2008) (identifying "some attention to recovery issues" as useful to support a no jeopardy conclusion), such analyses were not required here. The district court committed legal error when it treated the absence of a specific Incidental Take Statement analysis and the failure to identify a quantifiable recovery goal as technical deficiencies that precluded a no-jeopardy finding in the Biological Opinion.

B. <u>NEPA.</u> Under NEPA, an agency must "rigorously explore and objectively evaluate all reasonable alternatives" to a proposed project. 40 C.F.R. § 1502.14(a). *Center for Biological Diversity v. United States Department of the Interior* ("*CBD*") makes clear that an agency violates NEPA when it arbitrarily reaches a conclusion without analyzing a critical distinction between two proposed alternatives. 623 F.3d 633, 636, 646 (9th Cir. 2010) ("[T]he BLM assumed *without analysis* that the [Mining Plan of Operations] process would impose no constraints on, and would have no effect on, the manner in which Asarco would conduct new mining operations on the exchanged land." (emphasis added)).

Here, the district court acknowledged the agency's analysis of the differing environmental consequences of the various alternatives, including the pumping alternative DOW proposes. Under the standard of review identified in *CBD*, the district court's analysis does not support its arbitrary and capricious finding.

C. The CWA. The CWA prohibits projects that discharge dredged or fill material "if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem." 40 C.F.R. § 230.10(a). The district court concluded that DOW's CWA claim was likely to succeed on the merits because the Corps failed to make a finding that the multiple pump alternative was impracticable. But, the Corps expressly found that there was no practicable alternative to the proposed project that would have less adverse impact on the sturgeon populations, and that finding was supported by ample evidence in the record. The district court thus abused its discretion in failing to take this finding into account in analyzing the likelihood of success on the merits of the CWA claim.

We therefore **VACATE** the preliminary injunction.